|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| JUAN CONTRERAS, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>J.R. SIMPLOT COMPANY, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:17-cv-00585-KJM-EFB<br><br>ORDER |

Juan Contreras brings this putative class action against an agricultural company for several labor code violations. Defendant J.R. Simplot Company ("Simplot") removed the case to this court. Notice of Removal ¶ 1, ECF No. 1. Plaintiff now moves to remand to Sacramento County Superior Court. Mot., ECF No. 10. Defendant opposes the motion, and plaintiff has replied. Opp'n, ECF No. 11; Reply, ECF No. 15. As explained below, the court GRANTS plaintiff's motion to remand.

/////
/////
/////
/////

1

I. BACKGROUND

Plaintiff filed this putative class action in Sacramento County Superior Court on January 3, 2017, alleging: (1) failure to pay overtime wages, California Labor Code §§ 510 and 1198; (2) meal period violations, *id.*§§ 226.7 and 512(a); (3) rest break violations, *id.*§ 226.7; (4) failure to pay minimum wages, *id.*§§ 1194, 1197 and 1197.1; (5) failure to pay wages due at termination, *id.*§§ 201 and 202; (6) failure to timely pay wages during employment, *id.*§ 204; (7) wage statement penalties, *id.*§ 226(a); (8) failure to keep payroll records, *id.*§ 1174(d); (9) failure to reimburse business expenses, *id.*§§ 2800 and 2802; and (10) unfair business practices, Cal. Bus. & Prof. Code § 17200. Compl. ¶¶ 17–48.

Defendant removed the case to federal court, asserting jurisdiction under the Class Action Fairness Act, 12 U.S.C. § 1453 ("CAFA"). Notice of Removal. To support its contention that the amount in controversy exceeds the requisite $5 million, defendant submitted the declaration of Simplot's Human Resources Manager, Melanie A. Angiolini ("Angiolini"). Decl., ECF No. 4. In her declaration, Angiolini states "936 individuals worked as non-exempt employees for Simplot in California ('the putative class members')," "the putative class members worked approximately 15,435 pay periods," and "[t]he Company's records reflect that the average pay rate for all putative class members is $18.52 per hour." *Id.* at 2–3. Defendant used these numbers to calculate a total amount in controversy of $13,773,163.28, which exceeds the requisite $5 million for CAFA-based jurisdiction.

Plaintiff now moves to remand, challenging defendant's calculation. Mot. 4.

II. LEGAL STANDARD: CAFA JURISDICTION

A defendant may remove to a federal district court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). CAFA gives federal courts original jurisdiction over certain class actions only if (1) the class has more than 100 members, (2) any member of the class is diverse from the defendant, and (3) the amount in controversy exceeds $5 million, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2), (5)(B).

/////

2

A.  CAFA Generally

Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and wanted courts to interpret CAFA "expansively." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Although courts "strictly construe the removal statute against removal jurisdiction" and apply a "strong presumption against removal," *Gaus v. Miles, Inc.*, 980 F.3d 564, 566 (9th Cir. 1992), "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 554 (2014) (citing S. Rep. No. 109-14, p. 43 (2005) ("[CAFA's] provisions should be read broadly with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")). Nonetheless, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court. 28 U.S.C. § 1447(c).

B.  Burdens Of Proof; CAFA Amount-in-Controversy Disputes

A defendant's burden of proof as to the amount in controversy for removal purposes is lenient. "A defendant seeking to remove a case from state to federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee*, 135 S. Ct. at 549 (quoting 28 U.S.C. § 1446(a)). But the notice of removal "need not contain evidentiary submissions": A defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" suffices. *Id*. at 551, 554.

In contrast, when "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 554. The parties may submit evidence outside the complaint including affidavits or declarations or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation omitted). When the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable, and not constitute mere speculation and conjecture. *Ibarra*, 775 F.3d at 1197, 1199. "CAFA's requirements are to be

tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198. Then "the district court must make findings of jurisdictional fact to which the preponderance standard applies." *Dart Cherokee*, 135 S. Ct. at 554 (citation omitted). If "the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

III. DISCUSSION

Plaintiff moves to remand based exclusively on the amount in controversy under CAFA. This court recently decided a similar case, *Farley v. Dolgen Cal. LLC*, No. 2:16-cv-02501, 2017 WL 3406096 (E.D. Cal. Aug. 8, 2017), which is instructive here. In *Farley*, the court determined the defendant did not meet its burden of proof to show that the amount in controversy exceeded $5 million. *See id.* at *5. The only proof the defendant provided was a declaration from a Workforce Reporting Analyst showing the average salary for the workers covered by the complaint. *See id*. For similar reasons, the court finds defendant here has not met its burden in establishing federal jurisdiction under CAFA. To determine if the amount in controversy exceeds $5 million, courts first look to the complaint. *Ibarra*, 775 F.3d at 1197. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). Here, plaintiff brought a class action and alleged that his amount in controversy is less than $75,000.00. Compl. ¶ 1. In its notice of removal, defendant relies on the complaint and the averments of Human Resources Manager Angiolini, described above, to argue that the aggregated amount in controversy is an estimated $13,773,163.28, discussed further below. Notice of Removal 3, 6–14.

In his remand motion, plaintiff does not provide rebuttal evidence. Instead, he challenges defendant's calculations and argues defendant has not met its burden because it makes assumptions unsupported by evidence. Mot. 4–16. Defendant contends plaintiff's motion to remand must fail because plaintiff did not submit "any evidence contrary to that offered by [defendant]." Opp'n 2:13–14. Because plaintiff challenges defendant's estimate, defendant bears

4

the burden to establish jurisdiction by a preponderance of the evidence. *Dart Cherokee*, 135 S. Ct. at 553–54; *see also Ibarra*, 775 F.3d at 1197 (emphasizing "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million") (citation omitted). Accordingly, defendant must provide more than a plausible statement to show it satisfies the jurisdictional prerequisite, and the absence of plaintiffs' rebuttal evidence does not change that requirement.

### A. Overtime Violations

With respect to plaintiff's overtime claim, defendant relies on Angiolini's declaration, stating that the "putative class members worked approximately 61,941 weeks during the applicable period" and noting the average hourly rate as $18.52 per hour. Notice of Removal 6. Defendant then uses a rate of "1 hour of overtime per employee, per week" to determine the amount in controversy for the overtime violations to be $1,720,720.98.[1] This calculation was enough to support removal, but defendant has not met its heightened burden to rebut plaintiff's challenge to the calculation. A defendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is "a declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages." *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Farley*, 2017 WL 3406096, at *3 (finding defendant failed to meet its burden under CAFA by relying on a Workforce Reporting Analyst's declaration regarding the average salary without providing any other corroborating evidence). As such, defendant has provided insufficient evidence to meet its heightened burden for the overtime claim damages.

### B. Meal and Rest Break Violations

Plaintiff alleges defendant violated the California Labor Code's meal and rest period standards. Defendant calculated an amount in controversy for each type of violation to be $1,147,147.32. Notice of Removal 8–9. To reach this number, defendant uses a similar

---

[1] $27.78 (1.5 X $18.52) X  1 X 61,941 = $1,720,720.98

5

calculation as that for the overtime violations. *Id.* at 7–8. For each claim, defendant multiplies $18.52 (the average hourly rate for putative class members) by 1 (missed meal/rest period per workweek) by 61,941 (number of weeks worked by putative class during the period at issue).[2]

Thus, for meal and rest period violations combined, defendant calculates a total amount in controversy for these two claims to be $2,294,294.64.[3]

Again, this calculation, paired with the accompanying explanation and declarations, sufficed under the low burden of proof at the time of removal. *See Dart Cherokee*, 135 S. Ct. at 551, 554 (holding defendant's "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" was sufficient and notice of removal "need not contain evidentiary submissions"). For removal purposes, defendant needed to provide only a "short and plain" statement, and it did that. *Id.* at 553 ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

Similar to the overtime calculation, however, without corroborating documents Angiolini's declaration is "speculative and self-serving." *Garibay*, 539 F. App'x at 764; *see also Farley*, 2017 WL 3406096 at *3 (finding similar declarations to be "speculative and self-serving"); *Carag v. Barnes & Noble, Inc.*, No. 2:15-cv-00115, 2015 WL 3706497, at *2, 5 (E.D. Cal. June 11, 2015) (same). Therefore, this court does not consider defendant's calculation, which relies solely on Angiolini's declaration, as part of the amount in controversy.

C. <u>Waiting Time Penalties</u>

In its calculation for waiting time penalties, defendant assumes each employee would be entitled to the maximum statutory penalty. Notice of Removal 10. However, because defendant has not supported this calculation by a preponderance of the evidence, the court rejects defendant's assumption. *See Garibay,* 539 F. App'x at 764 (rejecting defendants' assumption that each employee was entitled to maximum statutory penalty because the assumption was not supported by any evidence); *see also Weston v. Helmerich & Payne Inter. Drilling Co.,* 2013 WL

---

[2] $18.52 X 61,941 X 1 = $1,147,147.32

[3] $1,147,147.32 X 2 = $2,294,294.64

5274283, at *3–6 (E.D. Cal. 2013) (noting that "the Ninth Circuit appears to have disavowed the use of a 100% violation rate"). The court does not consider defendant's estimate of waiting time penalties as part of the amount in controversy.

D. Itemized Wage Statement Penalties

To calculate the penalties for non-compliant wage statements, defendant again assumes a 100 percent violation rate. Notice of Removal 12. Defendant represents it "issued at least 15,435 wage statements to 669 putative class members during the applicable statute of limitations period." *Id*. It then multiplies 669 by $50, which is the penalty for violations within the initial pay period, and adds that sum to 14,766 multiplied by $100, which is the penalty for subsequent wage statement violations. *Id*. Thus, defendant calculates a total amount in controversy for this claim to be $1,510,050.00.[4]

Similar to the calculation for wait time penalties, however, this calculation is based on an assumption that each class member will recover the maximum penalty for each pay period, which is not supported by evidence. *See Garibay*, 539 F. App'x at 764 (finding similar calculation assumed "every single member of the class would be entitled to recover penalties for every single pay period" was not supported by evidence and could not be used to calculate amount in controversy). As such, defendant has provided insufficient evidence to meet its heightened burden for the itemized wage statement penalties.

E. Attorney's Fees

Defendant combines its award estimates to form the baseline for its attorney's fees calculation. Applying the Ninth Circuit's twenty-five percent benchmark level for reasonable attorney's fees in class action cases, defendant estimates $2,754,632.66 in attorney's fees.[5] *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Defendant contends the court should consider these likely attorney's fees in determining the amount in controversy. But because there is insufficient evidence to establish the award estimates upon which attorney's fees

---

[4] (669 X $50) + (14,766 X $100) = $1,510,050.00

[5] $11,018,530.62 X .25 = $2,754,632.66

7

would be based, there is also insufficient evidence to establish defendant's $2,754,632.66 attorneys' fees estimate in assessing the amount in controversy.

Without these amounts—$1,720,720.98 for overtime violations, $2,294,294.64 for meal and rest break violations, $744,504.00 for waiting time penalties, $1,510,050.00 for itemized wage statement penalties, and $2,754,632.66 for attorney's fees—the defendant's estimate of the total amount sought by the remaining claims, $4,748,961.00, does not exceed $5 million as required by CAFA, so the court need not address them individually. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 678 (9th Cir. 2006) ("Prominent among the requirements in these specified [CAFA] paragraphs [is] that the aggregate amount in controversy *must exceed* $5,000,000.") (emphasis added).

IV. CONCLUSION

Although defendant's notice of removal adequately stated an amount in controversy beyond $5 million, plaintiff has challenged the calculation, and defendant has failed to meet its heightened burden to support its calculation by a preponderance of the evidence. The court therefore GRANTS plaintiff's motion to remand to Sacramento County Superior Court.

IT IS SO ORDERED.

This order resolves ECF No. 10.

DATED: October 5, 2017.

_____
UNITED STATES DISTRICT JUDGE